IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| JOSEPH JOEY WILSON, JR., : | |
| : | |
| Plaintiff, : | |
| : | |
| vs. : | Civil Action File No. |
| : | **1:02-CV-151 (WLS)** |
| NURSE DOVE, and SHYLAJA : | |
| PRABHAKAR, M.D., : | |
| : | |
| Defendants. : | |
| : | |

**RECOMMENDATION**

Presently pending in this *pro se* prisoner case are defendants' motions for summary judgment (tabs 68, 73)[1]. Plaintiff alleges that defendants were deliberately indifferent to his serious medical needs. Plaintiff has not responded to either motion for summary judgment.[2]

From July, 1999 until July 2000, plaintiff was confined at Lee State Prison. (Tab 27, page 41). Plaintiff alleges that Dr. Prabhakar disapproved his orthopedic shoe and light duty profile,

---

[1] Defendant Prabhakar filed the first motion at tab 68; defendant Dove filed a motion for summary judgment in essence adopting the motion of Prabhakar at tab 73.

[2] Defendant Prabhakar's motion for summary judgment was filed on April 13, 2005. Plaintiff was notified of the filing and directed to file a response thereto by order dated April 14, 2005 (tab 71). Defendant Dove filed a motion for summary judgment on April 29, 2005, and plaintiff was again notified and directed to file a response by order dated May 3, 2005 (tab 74). Plaintiff filed a motion for a continuance on June 6, 2005 for discovery purposes, which the undersigned denied by order dated June 15, 2005, giving plaintiff an additional 30 days to file his response. Plaintiff failed to do so, instead filing another motion for an extension of time on July 5, 2005. The undersigned denied this motion by order dated July 7, 2005, but gave plaintiff an additional fifteen days from that date to file his response. On July 8, 2005, plaintiff filed a notice of change of address reflecting his transfer to Ware State Prison. It is unclear if plaintiff received this final order.

resulting in his placement on a heavy labor detail where he re-injured his back in August of 2000 (tab 27, page 41).  Plaintiff states that Defendant Dove, a nurse at the prison, refused to allow plaintiff to see a physician, and accused plaintiff of "faking" his injury in order to get out of work.  Plaintiff was not able to see the physician, defendant Prabhakar, until October of 2000.  Plaintiff states that defendant Prabhakar ignored his recounting of his medical history, and determined that plaintiff just had arthritis and would have to "learn to live with it." (Tab 27, page 41).  Plaintiff states that he was finally taken to Augusta State Medical Prison in April of 2001, where he was refitted for orthopedic boots.

   Plaintiff alleges that he was finally examined at Palmyra Medical Centers in May of 2000, where an MRI scan revealed two herniated discs.  Plaintiff states that Prabhakar continued to treat plaintiff with only aspirin. (Tab 27, page 42).

   In determining a summary judgment motion, the inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  Welch v. Celotex Corp., 951 F.2d 1235 (11th Cir. 1992)(citing Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).  However, once the movant demonstrates the absence of a genuine issue of material fact, the nonmovant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

   When the nonmoving party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the nonmoving party's claim, or by pointing to specific portions of the record which demonstrate that the nonmoving party cannot meet its burden of proof at trial.  Clark v. Coats & Clark, Inc., 929

F.2d 604, 606-608 (11th Cir. 1991).

The existence of material disputed facts will not defeat summary judgment in favor of a public official, however, when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [plaintiff's] case, and on which [plaintiff] will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

It is well established that prison personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97 (1976).   However, "[m]ere incidents of negligence or malpractice do not rise to the level of constitutional violations." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991).  It must involve the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25 (1993).   Knowledge of the medical need alleged or circumstances clearly indicating the existence of such need is essential to a finding of deliberate indifference.  Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1191 (11th Cir. 1994), quoting  Horn ex rel. Parks v. Madison Co. Fiscal Court, 22 F.3d 653, 660 (6th Cir. 1994), cert. denied, 513 U.S. 873 (1994).   In the medical context, an

3

inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.  "It is......true that when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation."  McElligott v. Foley, 182 F.3d 1248, 1256-1257 (11th Cir. 1999).

"[D]elay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for the delay." Hill v. DeKalb RYDC, 40 F.3d 1176, 1191 (11th Cir. 1994).   The "seriousness" of an inmate's medical needs  may be decided by reference to the effect of delay in treatment.  Hill, 40 F.3d at 1188.  Where the delay in treatment results in an inmate's suffering "a life-long handicap or permanent loss, the medical need is considered serious." Id.  Further, the Eleventh Circuit has held that "[t]he tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay."  Harris v. Coweta County, 21 F.3d 388, 393-94 (11th Cir.1994).  Consequently, a delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.  Hill, 40 F.3d at 1189.

A serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir.1994) (quotation marks and citation omitted).

Defendants have submitted plaintiff's medical records in support of their motion. While at Lee State Prison, plaintiff reported to Medical Services that he was required to wear orthopedic shoes, and that the pair he had either needed repair or replacement. (Tab 69, exhibit 2, pg.7). It was noted in September of 1999 that his chart was to be sent to the Medical Director for review and consideration of plaintiff's request. (Tab 69, exhibit 2, page 7). On October 22, 1999, plaintiff was seen for the first time by defendant Prabhakar; plaintiff complained of worsening chronic low back pain with pain radiating down his right leg. After reviewing a 1997 x-ray which indicated degenerative changes, Prabhakar wrote orders for a low back support belt, new orthopedic boots for flat feet, and a prescription for Ultam, and ordered that plaintiff continue work and exercise. (Tab 69, exhibit 2, page 14). Defendant Prabhakar submitted the consultation request form for new boots on October 29, 1999. (Tab 69, exhibit 2, page 37). On November 22, 1999, plaintiff acknowledged receipt of the back support belt and receipt of "a pair of boots replaced sewed and replaced shoe strings + extra pair of shoe strings." (Tab 69, exhibit 2, page 45).

Plaintiff was not seen again by Defendant Prabhakar until March 16, 2000, wherein plaintiff again complained of worsening chronic low back pain. Dr. Prabhakar ordered a new MRI of the lumbosacral spine, and noted her plan to request a new consult. Dr. Prabhakar wrote a prescription for Percogesic. (Tab 69, exhibit 2, page 18). On March 22, 2000, Dr. Prabhakar saw plaintiff for complaints related to acute sinusitis and/or allergic rhinitis; plaintiff was given a prescription for an antibiotic and a nasal spray, and also received a new prescription for Ultram for his continuing low back pain. (Tab 69, exhibit 2, page 19).

On March 28, 2000, the MRI was completed; the results showed "degenerative changes

5

associated with scoliosis and post-surgical changes." (Tab 69, exhibit 2, page 42).  Dr. Prabhakar submitted a request for a neurosurgery consult on April 4, 2000 as a result of the MRI scan. (Tab 69, exhibit 2, page 39).

Plaintiff was seen on April 13, 2000, again with complaints of chronic low back pain and a request to change his work profile.  Plaintiff was given a light activity profile, discontinued on Ultram, and instead given Motrin as requested.  (Tab 69, exhibit 2, page 21).  Plaintiff was again seen by defendant Prabhakar on May 18, 2000 for complaints of low back pain, and received a refill of the prescription of Motrin and a renewed light activity profile.  (Tab 69, exhibit 2, page 23).

On May 1, 2000, plaintiff acknowledged receipt of a new pair of orthopedic boots. (Tab 69, exhibit 2, page 49).  According to the medical records, plaintiff did not see Dr. Pabhakar again after May 31, 2000.

Just because a plaintiff disagrees with the medical decision does not evidence deliberate indifference to his serious medical needs. This case presents a classic example of a plaintiff's disagreement with the medical judgment  used in plaintiff's treatment, sounding in medical malpractice.   To demonstrate "significant" harm, a plaintiff must provide verifying medical evidence that proves that it was the denial or delay in medical treatment that caused the harm rather than an underlying condition or injury.  Hill, 40 F.3d at 1186;  Harris,  21 F.3d at 393-94 (11th Cir.1994).    Plaintiff has failed to come forward with affirmative evidence of the effect of the delay in treatment.  Nothing plaintiff has provided the court, nor anything revealed by a review of the record, rebuts defendants' properly supported motion for summary judgment.

Consequently, it is the RECOMMENDATION of the undersigned that defendants' motions

for summary judgment be **GRANTED**.  Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable W. Louis Sands, United States District Judge, WITHIN TEN (10) DAYS of receipt thereof.

**SO RECOMMENDED**, this 3rd  day of August, 2005.

                        //S Richard L. Hodge
                        RICHARD L. HODGE
                        UNITED STATES MAGISTRATE JUDGE

msd